# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| TYLER BAKER, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-00673-CR |
| Plaintiff, | |
| vs. | **ORAL ARGUMENT REQUESTED** |
| UNIVERSITY OF VERMONT HEALTH NETWORK INC. and UNIVERSITY OF VERMONT MEDICAL CENTER INC. | |
| Defendants. | |

# DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.     Plaintiff's Wiretap Act Claim Should Be Dismissed ............................... 5

     A.    UVM Health Is A Party to the Communication, Which Bars His Claim. ................................................................................................ 5

     B.    Plaintiff Fails to Sufficiently Plead that the Crime/Tort Exception Applies. ........................................................................... 5

          1.    Plaintiff Fails to Plead a Criminal Violation of HIPAA Because Public Browsing Data Is Not Protected Health Information. ............................................................ 6

          2.    Plaintiff Fails to Plead Any Criminal or Tortious Purpose or A Crime or Tort Independent of the Interception. ............................ 9

     C.    Plaintiff Fails to Allege Interception of the "Contents" of Communications. ......................................................................... 12

II.    Plaintiff's Remaining Claims Should Be Dismissed. ........................... 13

     A.    Plaintiff Does Not Plead Cognizable Injuries or Damages. ...................... 13

     B.    Plaintiff's Breach of Express and Implied Contract Claims Fail Because No Contract Exists and UVM Health Did Not Breach Any "Promises." ................................................................................. 15

          1.    Plaintiff Has Not Alleged an Enforceable Contract Exists. .......... 15

          2.    Plaintiff Fails to Allege Breach of Any "Promises." .................... 16

          3.    Plaintiff Fails to Allege an Implied Contract for the Same Reasons. ...................................................................... 17

     C.    Without A Contract, Plaintiff's Breach of Duty of Good Faith Claim Fails. ............................................................................... 17

     D.    Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine and Fails to Satisfy the Duty, Breach, and Causation Requirements. ..................................................................... 18

          1.    Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine. ............................................................... 18

          2.    Plaintiff Has Not Alleged Duty, Breach, or Causation. ............... 18

E.    Plaintiff's Breach of Fiduciary Duty Claim Fails Because There Is No Fiduciary Relationship Between UVM Health and Plaintiff. ............. 20

F.    Plaintiff's Unjust Enrichment Claim Fails Because He Received the Health Care Services He Paid For. ....................................................... 20

G.    Plaintiff's VCPA Claim Fails Because He Is Not a "Consumer" and Has Not Pled Any Material Representations or Unfair Acts.................... 22

    1.    Plaintiff Is Not A "Consumer" and the Alleged Harm Was Not Caused By Acts "In Commerce." ............................................ 22

    2.    Plaintiff Fails to Plead that Any Misrepresentations Were Material. ......................................................................................... 23

    3.    Plaintiff Fails To Plead An Unfair Act. ......................................... 24

III.    Plaintiff's Requests for Injunctive Relief and Punitive Damages Are Improper. ......................................................................................................... 25

A.    Plaintiff Does Not Have Standing to Pursue Injunctive Relief. ............... 25

B.    Plaintiff Fails To Meet His Burden To Plead Punitive Damages. ............. 25

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
    2023 WL 5486240 (M.D.N.C. Aug. 24, 2023)........................................................................21

*American Hospital Association v. Becerra*
    2024 WL 3075865 (N.D. Tex. June 20, 2024) ....................................................................7, 8

*In re Arthur J. Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ..................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................4

*B.K. v. Eisenhower Med. Ctr.*,
    2024 WL 878100 (C.D. Cal. Feb. 29, 2024)........................................................................10

*Barrette v. Vill. of Swanton*,
    2023 WL 3891034 (D. Vt. June 6, 2023) .............................................................................20

*Barrette v. Vill. of Swanton*,
    2024 WL 1175078 (D. Vt. Mar. 19, 2024) ....................................................................18, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................4

*Bose v. Interclick, Inc.*,
    2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ....................................................................14

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) ...............................................................................16

*Caro v. Weintraub*,
    618 F.3d 94 (2d Cir. 2010)............................................................................................6, 9, 10

*Carter v. Gugliuzzi*,
    168 Vt. 48 (1998)..................................................................................................................23

*Cohen v. Casper Sleep Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) ......................................................................6

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023)..............................................................................12, 13

*Cooper v. Mount Sinai Health Sys., Inc.*,
　2024 WL 3586357 (S.D.N.Y. July 30, 2024) ....................................................8

*Country Mut. Ins. Co. v. Altisource Online Auction, Inc.*,
　2020 WL 4275660 (D. Vt. July 24, 2020) .......................................................15

*Dernier v. Mortg. Network, Inc.*,
　195 Vt. 113 (2013) ..........................................................................................22

*DJ's Tree Serv. & Logging, Inc. v. Bandit Indus., Inc.*,
　557 F. Supp. 3d 511 (D. Vt. 2021) ...................................................................23

*Doe I v. Google LLC*,
　2024 WL 3490744 (N.D. Cal. July 22, 2024) ..................................................10

*Doe v. Kaiser Found. Health Plan, Inc.*,
　2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..................................................11

*In re DoubleClick, Inc. Privacy Litig.*,
　154 F. Supp. 2d 497(S.D.N.Y. 2001) .......................................................9, 10, 14

*Drake v. Allergan, Inc.*,
　63 F. Supp. 3d 382 (D. Vt. 2014) .....................................................................24

*Dyer v. Nw. Airlines Corps.*,
　334 F. Supp. 2d 1196 (D.N.D. 2004) ...............................................................16

*Ehlers v. Ben & Jerry's Homemade Inc.*,
　2020 WL 2218858 (D. Vt. May 7, 2020) .........................................................25

*In re Est. of Elliott*,
　149 Vt. 248 (1988) ..........................................................................................13

*In re Facebook Internet Tracking Litig.*,
　140 F. Supp. 3d 922 (N.D. Cal. 2015) .............................................................12

*First Quality Carpets, Inc. v. Kirschbaum*,
　192 Vt. 28 (2012) ............................................................................................24

*Foti Fuels, Inc. v. Kurrle Corp.*,
　195 Vt. 524 (2013) ..........................................................................................22

*Goldberg v. Saint-Sauveur Valley Resorts, Inc.*,
　2018 WL 8370060 (D. Vt. Dec. 20, 2018) ...........................................20, 21, 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
　806 F.3d 125 (3d Cir. 2015).....................................................................5, 9, 12

*Greene v. Stevens Gas Serv.*,
    177 Vt. 90 (2004) ...................................................................................................13

*Gus' Catering, Inc. v. Menusoft Sys.*,
    171 Vt. 556 (2000) .................................................................................................18

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................13

*J.R. v. Walgreens Boots All., Inc.*,
    2021 WL 4859603 (4th Cir. Oct. 19, 2021) ..........................................................17

*In re JetBlue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................14

*Jurin v. Google Inc.*,
    768 F. Supp. 2d 1064 (E.D. Cal. 2011) ................................................................16

*Kane v. Univ. of Rochester*,
    2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......................................................8

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ..................................................................10

*Knelman v. Middlebury Coll.*,
    898 F. Supp. 2d 697 (D. Vt. 2012).......................................................................16

*Kurowski v. Rush Sys. for Health*,
    2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ..........................................................8

*Kurowski v. Rush System for Health*,
    2024 WL 3455020 (N.D. Ill. July 18, 2024)..........................................................10

*Lexington Ins. Co. v. Rounds*,
    349 F. Supp. 2d 861 (D. Vt. 2004).......................................................................13

*Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*,
    192 Vt. 322 (2012) .................................................................................................18

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................................................................19

*Monahan v. GMAC Mortg. Corp.*,
    179 Vt. 167 (2005).................................................................................................17

*Mooers v. Middlebury Coll.*,
    2022 WL 1719359 (D. Vt. May 27, 2022) .........................................................4, 5

*Mount Snow Ltd. v. ALLI, the All. of Action Sports*,
   2013 WL 4498816 (D. Vt. Aug. 21, 2013) ....................................................13, 17

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
   2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) .................................................14, 19

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ...............................................................................25

*Nienaber v. Overlake Hospital Med. Ctr.*,
   2024 WL 2133709 (W.D. Wash. May 13, 2024) ...........................................11, 16

*Okash v. Essentia Health*,
   2024 WL 1285779 (D. Minn. Mar. 26, 2024) .....................................................11

*Orthman v. Premiere Pediatrics, PLLC*,
   545 P.3d 124 (Okla. Civ. App. 2024) .................................................................21

*Otis-Wisher v. Medtronic, Inc.*,
   616 F. App'x 433 (2d Cir. 2015) ...................................................................22, 23

*Rosenfeld v. Lenich*,
   370 F. Supp. 3d 335 (E.D.N.Y. 2019) .................................................................12

*Rousseau v. Coates*,
   2022 WL 3910990 (D. Vt. Aug. 30, 2022) ..........................................................25

*Santoro v. Tower Health*,
   2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......................................................20

*Segar v. Barnett*,
   2020 WL 6565131 (D. Vt. Nov. 9, 2020) .............................................................19

*Shaffer v. Kaplan*,
   2014 WL 2009103 (D. Vt. May 16, 2014) ...........................................................13

*Smart v. Main Line Health*,
   2024 WL 2943760 (E.D. Pa. June 10, 2024) ......................................................20

*Smith v. Day*,
   148 Vt. 595 (1987) ...............................................................................................19

*T.D. v. Piedmont Healthcare, Inc.*,
   2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ................................................14, 15

*Tanzer v. MyWebGrocer, Inc.*,
   209 Vt. 244 (2018) ...............................................................................................17

*Terino v. Woodstock Resort Corp.*,
    2017 WL 2804919 (D. Vt. June 28, 2017) ...................................................17

*United States v. Jiau*,
    734 F.3d 147 (2d Cir. 2013).............................................................................5, 9

*In re Weaver*,
    2015 WL 4722615 (Bankr. D. Vt. Aug. 7, 2015) ...........................................24

*Weed v. Weed*,
    185 Vt. 83 (2008) ..............................................................................................21

*Wentworth v. Crawford & Co.*,
    174 Vt. 118 (2002) ............................................................................................19

*Zeno-Ethridge v. Comcast Corp.*,
    315 A.3d 978 (Vt. 2024) ...................................................................................18

**Federal Statutes**

18 U.S.C. § 2510(4) ...................................................................................................12

18 U.S.C. § 2510(8) ...................................................................................................12

18 U.S.C. § 2511 ...............................................................................................5, 6, 11

42 U.S.C. § 1320d-6(a)(3) ...........................................................................................6

**State Statutes**

9 V.S.A. § 2451a(1) ...................................................................................................22

9 V.S.A. § 2453(a) .....................................................................................................22

9 V.S.A. § 2461(b) .....................................................................................................22

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 4

**Regulations**

45 C.F.R. § 164.520(b) ...............................................................................................16

Defendants University of Vermont Health Network Inc. ("UVMHN") and University of Vermont Medical Center Inc. ("UVMMC") (collectively, "UVM Health") move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. UVM Health respectfully requests oral argument.

## INTRODUCTION

UVM Health is an integrated academic health system providing critical services to patients. Plaintiff does not take issue with the quality of care he received while a patient at UVM Health. Instead, he asserts claims based on allegations that UVM Health's website shared his personal information with non-party Meta Platform Inc. ("Meta") through an analytics tool called the "Meta Pixel." But critically, Plaintiff only alleges facts showing browsing activity on UVM Health's *public* website, such as looking up general information about doctors, conditions, or treatments, was transmitted to Meta. While Plaintiff makes vague references to UVM Health's secure patient portal ("MyChart") where actual medical records are accessible and appointment scheduling occurs, he does not (and cannot) plead any facts showing that his communications with UVM Health in MyChart were transmitted to Meta.

The Complaint therefore concerns only nonactionable public website browsing. Plaintiff wrongly asserts that this public browsing data is protected under the Health Insurance Portability and Accountability Act ("HIPAA") based entirely on written guidance from the Department of Health and Human Services ("HHS"). But the same day Plaintiff filed his Complaint, this HHS guidance was vacated because public browsing data, the exact type upon which Plaintiff bases his claims, does not constitute individually identifiable health information under HIPAA.

With the critical basis for his claims no longer viable, the Complaint fails to state a claim. Plaintiff's wiretap claim is barred because UVM Health was a party to the communications, and

Plaintiff fails to plead any basis to avoid that rule. Plaintiff's seven remaining claims fail because he does not plead cognizable injury or damages, and for the additional specific reasons discussed below. Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

## <u>BACKGROUND</u>

UVMHN is an integrated academic health network of hospitals and home health and hospice facilities, and UVMMC is a five campus academic medical facility under the umbrella of UVMHN. Compl. ¶ 2. Plaintiff alleges he was a patient of UVM Health in connection with treatment of a condition from 2021 until around 2023. *Id.* ¶¶ 33, 39.

UVM Health maintains a website at www.uvmhealth.org (the "Public Website"). *Id.* ¶ 3. The Public Website provides a wide range of information to the public at large, including information on doctors, conditions, and treatments. *Id.* ¶¶ 3, 17, 122. Doctors, patients, family members, students, reporters, court staff, and just generally curious people can navigate around the Public Website and search for and obtain information—whether they are looking on their own behalf or for reasons wholly unrelated to their own medical treatment. By contrast, UVM Health also separately maintains MyChart, which Plaintiff also calls a "Portal," that is a secure online patient portal operated by a third party service provider. A patient who logs into MyChart using their username and password may access their medical records, such as visit summaries, doctor's notes, and test results, and make appointment requests. *Id.* ¶ 48. Plaintiff refers to the Public Website and MyChart collectively as the "Website" and alleges that he used it while a patient. *Id.* ¶ 39. Plaintiff generally alleges that UVM Health used a pixel (a piece of code embedded in a website) provided by Meta (formerly Facebook) to track users' movements across the Public Website and "report it back to Facebook" and this "Pixel tracking was active on the

Website from at least July 2016 to September 2023." *Id.* ¶¶ 15–16.[1]  Plaintiff does not, because he cannot, allege any facts showing that the Meta Pixel was embedded in the MyChart website.

Plaintiff's factual allegations about the data transferred by the Meta Pixel are limited to the Public Website.  Plaintiff's Complaint includes 18 screenshots from the Public Website that purport to show implementation of the Meta Pixel had someone hypothetically visited the Public Website at a variety of different dates from June 2016 through January 2021.  *See id.* ¶¶ 13, 17, 114–15, 117–20, 122–27.[2]  Plaintiff alleges certain actions taken on the Public Website by a hypothetical user—looking up UVM Health's locations, *id.* ¶¶ 114–15, searching for or viewing a doctor's public profile, *id.* ¶¶ 117–20, viewing general information "about conditions treated by and treatments offered by UVM," *id.* ¶¶ 121–22, or viewing the MyChart landing page, *id.* ¶¶ 125–28—would result in information being shared with Meta, but he does not and cannot identify how this conveys the user's health information to Meta.  *See, e.g.*, *id.* ¶¶ 22, 39, 42 (admitting Plaintiff "visited Defendants' Website to research").

For example, Plaintiff makes allegations about when a user visits the public profile of a pediatric psychologist, *see id.* ¶¶ 117–18, but does not and cannot allege the disclosure of that webpage visit conveys health information, *e.g.*, that the user is a patient of that pediatric psychologist.  Indeed, if a reporter happened to be writing an article about child psychology, she might visit the same public website and make the same search, and the disclosure of her search activity would not constitute a revelation of anything about her health.  The website is precisely what it purports to be: a publicly available resource for non-confidential searching.

---

[1] Elsewhere in the Complaint, Plaintiff contradicts this allegation by alleging Pixel tracking was in place from "July of 2016 to spring of 2022."  Compl. ¶ 130.

[2] The overwhelming majority of these screenshots—nearly 75%—purport to be from prior to the 2021–2023 time period Plaintiff claims he used the website.

In contrast to the Public Website, Plaintiff makes no factual allegations supporting his bare assertions that the Meta Pixel transferred data from within MyChart where medical information is actually located. The Complaint contains no screenshots purporting to show the Meta Pixel was used on MyChart after a user logs in or any other supporting factual allegations. Nor could it, as UVM Health never used the Meta Pixel within MyChart. Any allegations in the Complaint regarding interception on MyChart are therefore conclusory.

Nonetheless, Plaintiff asserts eight causes of action: (1) violation of the Electronic Communications Privacy Act ("Wiretap Act"), (2) breach of express contract, (3) breach of the implied duty of good faith and fair dealing, (4) breach of implied contract, (5) negligence, (6) breach of fiduciary duty, (7) unjust enrichment, and (8) violation of the Vermont Consumer Protection Act ("VCPA"). Plaintiff seeks to represent a nationwide putative class and a Vermont subclass of all individuals "whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Website." *Id.* ¶¶ 239–40.

## <u>LEGAL STANDARD</u>

Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The sufficiency of a complaint is evaluated using a "two-pronged approach." *Mooers v. Middlebury Coll.*, 2022 WL 1719359, at *2 (D. Vt. May 27, 2022). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Second, the court considers whether the

4

factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

## ARGUMENT

### I.    Plaintiff's Wiretap Act Claim Should Be Dismissed

A Wiretap Act claim requires a showing that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). The Wiretap Act expressly exempts "a party to the communication" from liability. 18 U.S.C. § 2511(2)(d).

#### A.    UVM Health Is A Party to the Communication, Which Bars His Claim.

UVM Health cannot as a matter of law be liable under the Wiretap Act for "intercepting" Plaintiff's purported communications on UVM Health's website because UVM Health was an intended recipient and therefore a party to such communications. That is, Plaintiff's communications with UVM Health's website were communications with UVM Health. As noted above, the Wiretap Act explicitly exempts "a party to the communication" from liability. 18 U.S.C. § 2511(2)(d); *see United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013); *In re Google Inc.*, 806 F.3d at 142–43. The exemption is important and makes common sense: a party cannot be found liable for intercepting its own communications. Here, there is no question Plaintiff's alleged communications were "with [UVM Health] via the website," Compl. ¶ 50, and so the Court should dismiss Plaintiff's Wiretap Act claim.

#### B.    Plaintiff Fails to Sufficiently Plead that the Crime/Tort Exception Applies.

Plaintiff urges that the lone exception to the party exemption—the "crime/tort exception"—should negate the party exemption here, but it plainly does not apply. Where

applicable, the crime/tort exception permits a wiretap claim against a party to a communication if the communication was "'intercepted for the purpose of committing any criminal or tortious act.'" Compl. ¶ 272 (quoting 18 U.S.C. § 2511(2)(d)). "In the Second Circuit, the crime/tort exception is 'construed narrowly.'" *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3 (S.D.N.Y. July 12, 2018) (quoting *Jiau*, 734 F.3d at 152). "[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). For many reasons, Plaintiff fails to carry his burden to plead sufficient facts that this exception applies.

1.    Plaintiff Fails to Plead a Criminal Violation of HIPAA Because Public Browsing Data Is Not Protected Health Information.

Plaintiff attempts to plead the crime/tort exception based on his assertion that UVM Health violated 42 U.S.C. § 1320d-6(a)(3), which imposes a criminal penalty for knowingly disclosing individually identifiable health information ("IIHI"). Compl. ¶¶ 271, 274. UVM Health could only violate this section of HIPAA if the data at issue in this case constitutes "IIHI." 42 U.S.C. § 1320d-6(a)(3) (violation occurs when someone "knowingly … disclose[s] individually identifiable health information to another person"). It does not.[3]

Plaintiff's sole basis for contending that the Public Website browsing data purportedly shared with Meta constitutes IIHI is a specific piece of guidance issued by HHS in December 2022 (updated in March 2024) relating to whether the use of tracking technologies on regulated entities' public websites and private patient portals is a violation of HIPAA (the "Guidance"). *See, e.g.*, Compl. ¶¶ 93, 97, 98. In relevant part, HHS stated that "'in some cases, tracking

---

[3] Plaintiff also alleges the exception applies based on his claims of negligence, breach of express and implied contract, and breach of fiduciary duty, Compl. ¶ 280, but two of these claims are not torts, and regardless, Plaintiff fails to state a claim for any of the four. *See infra* Section II.

technologies on unauthenticated webpages may have access to [IIHI], in which case the HIPAA Rules apply.'" *Id.* ¶ 98 (quoting Guidance). The Guidance provided an example of a patient in search of a second opinion looking at a hospital's webpage listing its oncology services where the tracking technologies collected and transmitted that individual's "'IP address, geographic location, or other identifying information showing their visit to that webpage.'" *Id.* ¶ 99 (quoting Guidance). This example is nearly the same as Plaintiff's own allegations about him using the Public Website to research various doctors related to his condition. *See, e.g.*, *id.* ¶ 39. And Plaintiff reinforces this connection by relying exclusively on the Guidance to assert that the alleged tracking of this information is a violation of HIPAA. *Id.* ¶¶ 83, 93, 95–102, 275, 282.

***Plaintiff's problem is that this portion of the Guidance was found unlawful and vacated the same day Plaintiff filed this Complaint***. In *American Hospital Association v. Becerra* ("*Becerra*"), the Northern District of Texas vacated the Guidance as unlawful to the extent it provides that HIPAA obligations are triggered in "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers." 2024 WL 3075865, at *2 (N.D. Tex. June 20, 2024). In other words, it held that data that a person visited a public webpage regarding health conditions or providers is not IIHI regardless of whether the person has such a condition or is a patient of a provider. "Without knowing information that's never received [by the website owner]—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition

B) ≠ **IIHI** (Person A has Condition B)." *Id.* at *14.  The Guidance now acknowledges the ruling[4] and will continue to do so because HHS has moved to voluntarily dismiss its appeal.

This holding makes perfect sense.  Without knowing someone's subjective intent, it is impossible to know whether they were browsing a public website for themselves, for someone else, out of curiosity, or for any other reason.  The user could be a reporter or an attorney reviewing the record in this case.  The mere fact that one viewed a public webpage cannot possibly constitute IIHI without knowing the visitor's subjective intent (which is impossible).

To the extent any court has held that alleged public website browsing constitutes IIHI, those cases were decided prior to the *Becerra* decision vacating the unlawful Guidance.  In any event, cases where courts find plaintiffs sufficiently plead a HIPAA violation for the crime/tort exception involve detailed allegations of tracking within the private patient portal (not the public website) or a patient-exclusive activity on the public website.  *See, e.g.*, *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *3 (S.D.N.Y. July 30, 2024) (violation when disclosing that users "clicked to request an appointment"); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *2 (W.D.N.Y. Mar. 19, 2024) (violation when disclosing that users "click the 'Schedule an Appointment' button");  *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (violation when disclosing specific health information from within the patient portal).  Here, Plaintiff offers nothing but bare conclusory (both unsupported and unsupportable) allegations of tracking within MyChart and no allegations of patient-specific buttons or actions disclosed from the Public Website that could support an inference of a criminal act.

---

[4] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (updated June 26, 2024) (last visited August 29, 2024).

In sum, since this is a public website tracking case and because *Beccera* vacated the Guidance upon which Plaintiff premises his argument, the data Plaintiff alleges UVM Health shared is not IIHI and cannot create a violation of HIPAA.  Therefore, Plaintiff has failed to plead a criminal act, his attempt to make out a crime/tort exception to the Wiretap Act's party exemption fails, and his Wiretap Act claim should be dismissed.

      2.      <u>Plaintiff Fails to Plead Any Criminal or Tortious Purpose or A Crime or Tort Independent of the Interception.</u>

Even if the data at issue was IIHI (it is not), Plaintiff still could not make out a viable crime/tort exception here because he fails to plead that UVM Health *intended* to commit some separate *independent* crime or tort at the time of the alleged interception.  This means, first of all, that "[a]t the time of the recording" the alleged offender, here UVM Health, must "intend to use the recording to commit a criminal or tortious act."  *Caro*, 618 F.3d at 99–100.  "Merely intending to record the plaintiff is not enough," and, "[i]f, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation."  *Id.*  Said another way, it is not enough that a plaintiff allege the act of interception may have been tortious or criminal; rather "the focus . . . is upon whether the purpose for the interception—its intended use—was criminal or tortious."  *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 516(S.D.N.Y. 2001) (citation omitted).  This is the intent requirement.

Second, there is a separate requirement that the intended crime or tort must also be independent, that is: "secondary to the acquisition of the communication" and involve "tortious or criminal use of the interception's fruits."  *In re Google Inc.*, 806 F.3d at 145; *see also Jiau*, 734 F.3d at 152 (confining the crime/tort exception to "instances where the record party intends to the use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party").  The language and history of the Wiretap Act similarly

9

"indicate[s] that Congress authored the exception to the one-party consent rule to prevent abuses stemming from *use* of the recording not the mere *act* of recording." *Caro*, 618 F.3d at 101.

Plaintiff does not satisfy either of these requirements. As to the first—intent—Plaintiff fails to allege UVM Health intended to commit any crime or tort at the time of the alleged interception. Plaintiff alleges UVM Health's "purpose was tortious, criminal, and designed to violate federal and state legal provisions" because he contends UVM Health's alleged actions constituted violations of the law. Compl. ¶ 292; *see also id.* ¶ 280. Even assuming UVM Health's alleged violated the law, that fact alone does not mean UVM Health acted with an unlawful intent, purpose, or motive. *See Doe I v. Google LLC*, 2024 WL 3490744, at *5 n.4 (N.D. Cal. July 22, 2024) (under Wiretap Act it is not whether the interception violated another law but whether the purpose was criminal or tortious); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) (dismissing Wiretap Act claim because the purpose alleged (commercial advantage) was not "independently illegal or actionable conduct"); *cf. Kurowski v. Rush System for Health*, 2024 WL 3455020, at *4–6 (N.D. Ill. July 18, 2024) (intent requirement satisfied where hospital allegedly "actively chose" to track *within patient portal*).

Here, Plaintiff alleges only that the primary motivation in UVM Health's use of the Pixel was to use the browsing data for business purposes, specifically for advertising. Compl. ¶¶ 24, 91, 176, 268, 368. But using the Meta Pixel for this purpose does not equate to the required criminal or tortious intent. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing Wiretap Act claim because defendant's desire to "make money" is not a tortious or criminal intent); *In re DoubleClick*, 154 F. Supp. 2d at 518 (same). In fact, these allegations refute any suggestion that UVM Health had a purpose that was criminal or tortious,

let alone that it had the requisite specific intent to commit a crime or cause harm, which is required to allege the crime/tort exception.  18 U.S.C. § 2511(2)(d).

As for the second requirement,  Plaintiff fails to allege any independent criminal or tortious conduct.  Instead, Plaintiff alleges only that the alleged criminal and tortious acts are the "simultaneous" interception of Plaintiff's private information.  Compl. ¶ 273.  And Plaintiff's allegations that UVM Health violated the law encompasses only the simultaneous interception and disclosure of information to Meta.  *See id.* ¶¶ 277, 280(a)–(d).  But, courts routinely dismiss claims like Plaintiff's here for failure to plead that the interception was undertaken to further an ***independent*** criminal or tortious act.  *See, e.g.*, *Okash v. Essentia Health*, 2024 WL 1285779, at*4–5 (D. Minn. Mar. 26, 2024) (dismissing Wiretap Act claim because allegations that defendant "violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta"); *Nienaber v. Overlake Hospital Med. Ctr.*, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (dismissing Wiretap Act claim because "[p]laintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission"); *Doe v. Kaiser Found. Health Plan, Inc*., 2024 WL 1589982, at *2, *10 (N.D. Cal. Apr. 11, 2024) (dismissing Wiretap Act because "the act of interception itself cannot be the crime or the tort").  The fatal flaw in Plaintiff's allegations is that the alleged acts of "disclosure" and "interception" are one and the same.  Based on Plaintiff's own allegations, the crime/tort exception is not applicable.

Because the Wiretap Act bars claims, such as this one, brought against a party to the allegedly intercepted communication, and because Plaintiff has failed to allege a viable crime/tort exception, his Wiretap Act claim should be dismissed for failure to state a claim.

### C.    Plaintiff Fails to Allege Interception of the "Contents" of Communications.

An additional and independent basis for dismissal of the Wiretap Act claim is Plaintiff's

failure to adequately allege that the contents of any communication were intercepted.  The

Wiretap Act defines an "intercept[ion]" as the "aural or other acquisition of the contents of any

wire, electronic, or oral communication through the use of any electronic, mechanical, or other

device."  18 U.S.C. § 2510(4).  "[C]ontents," in turn, is defined as "any information concerning

the substance, purport, or meaning of [a] communication."  *Id.* § 2510(8).  In assessing Wiretap

Act claims, courts distinguish between the substantive "content" of a communication and mere

"record" information.  *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 348 (E.D.N.Y. 2019)

("Congress intended 'contents' to refer only [to] the message conveyed by the communication,

and not to the record information generated in the course of the communication.") (citing *In re

Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *In re Google*, 806 F.3d at 135–39.

Despite Plaintiff's conclusory allegations that the "contents" of communications are

shared, the only Plaintiff-specific information Plaintiff alleges he transmitted to UVM Health are

URLs.  Compl. ¶ 46.  These URLs are not "content" under the Wiretap Act because they are

nothing more than "record information regarding the characteristics of the message that is

generated in the course of the communication."  *In re Facebook Internet Tracking Litig.*, 140 F.

Supp. 3d 922, 935 (N.D. Cal. 2015) (a URL sent to Meta by a user's browser did not qualify as

"contents" under the Wiretap Act).  Although not involving a federal Wiretap Act claim, the

court's analysis in *Cook v. GameStop, Inc.*, when dismissing a state wiretap act claim, is

instructive since both acts have the same requirement.  689 F. Supp. 3d 58 (W.D. Pa. 2023).  As

the court stated, "[w]hen a user moves his or her mouse and clicks on a link, that click is a

request for the computer to take the user to a specific location within the webpage's architecture.

Navigating through a website's multiple pages is not the substance of a communication; it's an

action taken to go to a digital location." *Id.* at 70.  The same reasoning applies here.  None of the URLs convey the "meaning" or "substance" of any communication Plaintiff made with UVM Health.  *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (dismissing wiretap claim because Plaintiffs' searches merely allowed Google "to make 'educated guesses' about a user's traits and habits," which was not sufficient to constitute the "contents" of the communications).  Here the alleged data that was intercepted is record information generated in the course of communication and does not sufficiently allege that the contents of any communication were intercepted.

## II.    Plaintiff's Remaining Claims Should Be Dismissed.

### A.    Plaintiff Does Not Plead Cognizable Injuries or Damages.

Each of Plaintiff's remaining claims should be dismissed because he does not plead cognizable injuries or damages, which are elements of each of the claims under Vermont law. *See Mount Snow Ltd. v. ALLI, the All. of Action Sports*, 2013 WL 4498816, at *5 (D. Vt. Aug. 21, 2013) ("Vermont law requires proof of damages as an element of a breach of contract claim."); *Lexington Ins. Co. v. Rounds*, 349 F. Supp. 2d 861, 866 (D. Vt. 2004) ("[T]he elements of negligence [include] actual damages."); *In re Est. of Elliott*, 149 Vt. 248, 253 n.2 (1988) ("Unjust enrichment focuses on the value of the benefit actually conferred upon the defendant."); *Shaffer v. Kaplan*, 2014 WL 2009103, at *11 (D. Vt. May 16, 2014) ("[B]reach of fiduciary duty requires proof of damages"); *Greene v. Stevens Gas Serv.*, 177 Vt. 90, 96 (2004) (VCPA requires cognizable injury).  Plaintiff alleges that he has suffered damages in the form of: (1) "release, disclosure, and publication of [his] Private Information," (2) "the imminent risk of suffering additional damages in the future," (3) "disruption of [his] medical care and treatment," (4) "out-of-pocket expenses," and (5) "the loss of the benefit of the bargain."  Compl. ¶¶ 313, 334, 353.

The Court should dismiss Claims 2 through 8 for lack of cognizable injuries or damages on two grounds.  First, Plaintiff fails to allege *any* facts to support his claims of damages.  For example, Plaintiff alleges that the "release, disclosure, and publication of [his] Private Information" resulted in "diminution of value of [his] Private Information."  *Id.* ¶ 334.  Yet, Plaintiff fails to explain how the value of his information was somehow diminished or how he lost the opportunity to sell his information.  Likewise, Plaintiff fails to plead how his "medical care and treatment" was somehow "disrupt[ed]" as a result of UVM Health's actions.  *Id.* ¶¶ 313, 334, 353.  To the extent Plaintiff alleges emotional damages (for the negligence claim only), they are conclusory.  He only vaguely claims that he has suffered "embarrassment, emotional distress, humiliation and loss of enjoyment of life."  *Id.* ¶ 368.  Plaintiff, however, fails to allege any facts to support these boilerplate and conclusory assertions, thus requiring dismissal.  *See T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024) (dismissing negligence, breach of contract, fiduciary duty and unjust enrichment claims because "[n]o facts are alleged that would explain how receiving targeted advertisements . . . would possibly cause any of the Plaintiffs to suffer these damages."); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *5 (E.D. Pa. Oct. 10, 2023) (dismissing negligence and privacy claims premised on "boilerplate [damages] allegations in the absence of facts to support them").

Second, none of Plaintiff's allegations amount to cognizable damages.  *See, e.g.*, *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) ("allegations concerning 'invasion of [her] privacy,' . . . and 'misappropriation of confidential data' are also not cognizable economic losses.") (citation omitted); *In re DoubleClick*, 154 F. Supp. 2d at 525 (data collection does not "constitute damage to consumers or unjust enrichment to collectors"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (data disclosure

14

in violation of privacy policy had no compensable value).  Thus, Plaintiff's alleged "damages

theories [are] untenable . . . [and] are not actionable."  *Piedmont*, 2024 WL 3972984, at *3.

**B.    Plaintiff's Breach of Express and Implied Contract Claims Fail Because No
Contract Exists and UVM Health Did Not Breach Any "Promises."**

1.    Plaintiff Has Not Alleged an Enforceable Contract Exists.

Plaintiff fails to identify the specific contracts that he entered into with UVM Health or

attach the contracts to his Complaint.  Instead, he relies on vague allegations that he entered into

"express contracts for the provision of medical services" that "are formed and embodied in

multiple documents."  Compl. ¶ 300.  These conclusory allegations are not enough to sustain a

claim for breach of contract under Vermont law.  *See Country Mut. Ins. Co. v. Altisource Online

Auction, Inc*., 2020 WL 4275660, at *5 (D. Vt. July 24, 2020) ("[C]laimant 'must demonstrate

the existence of an enforceable contract, through specific allegations about the parties to the

agreement, the date of the contract's formation, and the contract's 'major terms.'") (quoting

*Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *10 (S.D.N.Y. Feb. 23, 2010)).

Plaintiff only identifies, by name, UVM Health's "Privacy Notice" and cites to a

historical version of a privacy policy from the Internet Archive.  Compl. ¶¶ 300–02 & n.73, 308.

Plaintiff, however, does not allege *which* privacy policy from *which* year he believes is the

operative contract.  Nor does he allege that he ever read or agreed to the privacy policy (or any

policy) at any point.  This is insufficient for pleading that a contract existed between Plaintiff and

UVM Health.  *See Country Mut. Ins. Co.*, 2020 WL 4275660, at *5.  Assuming Plaintiff is

referring to "The University of Vermont Health Network Web Site Privacy Policy," this is not an

express contract.  Courts across the country have recognized that standalone corporate privacy

policies are not enforceable contracts where, like here, they contain only broad statements about

corporate policy provided for informational purposes to help individuals understand how UVM

Health may use their personal information.  *See, e.g.*, *Jurin v. Google Inc.*, 768 F. Supp. 2d 1064, 1073 (E.D. Cal. 2011) (dismissing breach of contract claims because a "broadly stated promise to abide by its own policy does not hold Defendant to a contract"); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (holding that plaintiffs could not maintain suit for breach of privacy statement because it was not a contract); *see also Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 712 (D. Vt. 2012) ("[G]eneral statements of ideals as opposed to promises for specific treatment in specific situations . . . cannot give rise to contractual obligations.") *aff'd*, 570 F. App'x 66 (2d Cir. 2014).

If Plaintiff is referring to the "Notice of Privacy Practices at UVM Medical Center," his breach of contract claim still fails.  Compl. ¶ 167.  This notice is required by HIPAA, *see* 45 C.F.R. § 164.520(b), and cannot "serve as an enforceable contract without a separate 'meeting of the minds' between the parties," *Nienaber*, 2024 WL 2133709, at *13.  The notice serves "to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions" and is not "contractual in nature."  *Id.*  "Because [healthcare providers] are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions cannot create contractual obligations."  *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017).

2.    <u>Plaintiff Fails to Allege Breach of Any "Promises."</u>

Even if the Privacy Notice was an enforceable contract (it is not), Plaintiff's breach of contract claim still fails because he has not plausibly alleged that UVM Health breached any purported contractual obligation in the notice.  Plaintiff alleges that UVM Health "breached its contractual obligation . . . when it disclosed [Plaintiff's] Private Information to Meta," Compl. ¶ 307, but cites only general statements from the privacy policy, none of which would be breached by the alleged transfer of data to Meta.

16

3.    <u>Plaintiff Fails to Allege an Implied Contract for the Same Reasons.</u>

Plaintiff fails to plausibly allege the existence of any valid implied contract.  A claim for breach of an implied contract requires the same elements as a claim for breach of an express contract, *Mount Snow Ltd.*, 2013 WL 4498816, at *8, and Plaintiff's implied contract claim is based on the same allegations as his express contract claim.  *See, e.g.*, Compl. ¶ 344 ("Defendants' express representations, including, but not limited to, express representations found in their Privacy Notice, formed and embodied an express contractual obligation . . . ."). His implied contract claim fails for the same reasons discussed *supra* Section II.B.1 & 2.  *See J.R. v. Walgreens Boots All., Inc.*, 2021 WL 4859603, at *5 (4th Cir. Oct. 19, 2021) (dismissing implied contract claim where "there is no basis to conclude that [Plaintiffs] entered into an implied contract with [Defendant] that included a term restricting [Plaintiffs' PII] use").

Further, to the extent that the Court finds that an express contract exists, the Court should dismiss the implied contract claim as duplicative.  *See Terino v. Woodstock Resort Corp.*, 2017 WL 2804919, at *11 (D. Vt. June 28, 2017) ("where there was an express contract between the parties . . . there could be no implied contract on the subject.") (citation omitted).

## C.    Without A Contract, Plaintiff's Breach of Duty of Good Faith Claim Fails.

Plaintiff's claim fails because "[a] cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties," but Plaintiff fails to allege the existence of a contract.  *Tanzer v. MyWebGrocer, Inc.*, 209 Vt. 244, 262 (2018).  Even if a contract existed, Plaintiff's claim fails because it is premised on the same conduct as his breach of contract claims.  *Compare* Compl. ¶ 302, *with id.* ¶ 323; *see Monahan v. GMAC Mortg. Corp.*, 179 Vt. 167, 187 n.5 (2005) ("[W]e will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract based upon the same conduct.").

**D.** **Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine and Fails to Satisfy the Duty, Breach, and Causation Requirements.**

    1.    <u>Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine.</u>

Under Vermont law, "[t]he economic loss rule 'prohibits recovery in tort for purely economic losses.'" *Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 192 Vt. 322, 327 (2012) (citation omitted). As such, Vermont does not "recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." *See Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558 (2000) (citation omitted). To the extent Plaintiff alleges any cognizable damages, *see supra* Section II.A, they are largely economic losses. *See* Compl. ¶ 368 (alleging loss of the benefit of the bargain, increased infiltrations into his privacy through spam and targeted advertising, loss of privacy, loss of confidentiality). While Plaintiff also asserts damages for emotional distress, humiliation, and loss of enjoyment of life, these are purely emotional harms that are insufficient to satisfy the "actual injury" requirement of a negligence claim. *See Zeno-Ethridge v. Comcast Corp.*, 315 A.3d 978, 991–92 (Vt. 2024) (affirming that negligence requires "actual injury," which means "physical injury," not an emotional one). The Court should dismiss Plaintiff's negligence claim as barred under the economic loss doctrine.

    2.    <u>Plaintiff Has Not Alleged Duty, Breach, or Causation.</u>

Even if the Court finds that the economic loss doctrine does not bar Plaintiff's negligence claim, it still fails because Plaintiff has not alleged any duty, breach, or causation. *See Barrette v. Vill. of Swanton*, 2024 WL 1175078, at *7 (D. Vt. Mar. 19, 2024). Plaintiff claims that UVM Health had a duty: (1) to safeguard his private information, (2) under HIPAA privacy laws, and (3) under Section 5 of the Federal Trade Commission Act ("FTCA"). Compl. ¶¶ 358–62. None of these allegations amounts to a legal duty.

First, Vermont has never recognized a common-law duty to safeguard online browsing information. And the Court should not "create a new common law duty of care where none has previously existed." *Smith v. Day*, 148 Vt. 595, 599 (1987). To the extent Plaintiff is relying on the Wiretap Act to establish a duty to safeguard online browsing information, Plaintiff's negligence claim would still fail because UVM Health did not violate the Wiretap Act. *See supra* Section I. Thus, Plaintiff cannot premise his negligence claim on this allegation.

Second, Plaintiff's reliance on HIPAA and Section 5 of the FTCA (Compl. ¶¶ 359, 362) is unavailing because these statutes do not create a private right of action and in the absence of an actionable duty, Plaintiff's negligence claim cannot survive. *See Wentworth v. Crawford & Co.*, 174 Vt. 118, 126 (2002) ("Without a legal duty of care, an action for negligence cannot stand."); *see also Segar v. Barnett*, 2020 WL 6565131, at *3 (D. Vt. Nov. 9, 2020) ("As a matter of law, Plaintiff cannot state a claim on which relief may be granted for Defendants' alleged violations of his rights under HIPAA because there is no private right of action under HIPAA."); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225 (S.D. Fla. 2022) ("There is no private cause of action implied under the [FTC] Act.").

Even assuming Plaintiff adequately pled an existence of a duty, Plaintiff's negligence claim does not properly plead breach or causation. Fatally, Plaintiff does not allege that any medical records or IIHI were improperly disclosed. Nor can he since private medical records do not exist on the Public Website. Moreover, Plaintiff fails to plead with specificity any IIHI he provided to UVM Health and what UVM Health in turn shared with third parties. Simply put, without the "the content, timing, or number of communications" the allegations in Plaintiff's negligence claim are no more than "naked assertion[s] devoid of further enhancement." *See Murphy*, 2023 WL 7017734, at *5 (dismissing similar negligence claim as insufficiently pled);

*Smart v. Main Line Health*, 2024 WL 2943760, at *4 (E.D. Pa. June 10, 2024) (same); *Santoro v. Tower Health*, 2024 WL 1773371, at *6  (E.D. Pa. Apr. 24, 2024) (same).  Plaintiff's negligence claim cannot survive in the absence of any breach.  *See Barrette*, 2024 WL 1175078, at *7.

### E.    Plaintiff's Breach of Fiduciary Duty Claim Fails Because There Is No Fiduciary Relationship Between UVM Health and Plaintiff.

A fiduciary relationship arises "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Barrette v. Vill. of Swanton*, 2023 WL 3891034, at *19 (D. Vt. June 6, 2023).  Claims for breach of fiduciary duty generally involve fraud, bad-faith self-dealing, conflict of interest, or a failure to disclose information.  *Id.* at *19 n.8.  Plaintiff's breach of fiduciary duty claim fails for two reasons.

First, Plaintiff fails to allege the existence of a fiduciary relationship between him and UVM Health.  Plaintiff alleges that UVM Health "became a fiduciary by its undertaking and guardianship of the Private Information."  Compl. ¶ 373.  But, Vermont courts, including the Court, have specifically rejected a fiduciary duty claim when a patient's alleged harm was not "caused in the course of the provision of treatment."  *See Barrette*, 2023 WL 3891034, at *19– 20.  And Plaintiff's claim here is even more attenuated as his allegations are based on his browsing activity on a ***public*** website.  Just as a reporter or student searching on UVM Health's Website would not have a fiduciary relationship with UVM Health, so too here.  Second, Plaintiff fails to allege UVM Health breached any duty.  *See supra* Section II.D.

### F.    Plaintiff's Unjust Enrichment Claim Fails Because He Received the Health Care Services He Paid For.

To state a claim for unjust enrichment, Plaintiff must plead "(1) that a benefit was conferred on defendant, (2) that defendant accepted the benefit, and (3) that it would be inequitable to allow defendant to retain the benefit."  *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, 2018 WL 8370060, at *17 (D. Vt. Dec. 20, 2018) (citation omitted).  Plaintiff also must

demonstrate that he did not receive what he paid for.  *See id.* ("[I]f the defendant paid the contracted for price for the benefit, then there can be no claim of unjust enrichment); *Weed v. Weed*, 185 Vt. 83, 90 (2008) ("[Plaintiff] got exactly what she paid for—hardly an unjust enrichment.").  Plaintiff's unjust enrichment claim fails for three reasons.

First, Plaintiff has not alleged that he conferred a benefit on UVM Health.  In his Complaint, Plaintiff alleged that he "conferred a benefit on Defendants in the form of valuable sensitive medical information."  Compl. ¶ 380.  This argument fails because "[c]ourts have . . . routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'"  *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (dismissing unjust enrichment claim where plaintiffs alleged that defendants retained the "monetary benefit of Plaintiffs' valuable PII and PHI").

Second, Plaintiff received exactly what he paid for and it would not be unjust for UVM Health to retain any benefits conferred.  Plaintiff alleges that he "conferred a benefit on Defendants by paying Defendants for health care services."  Compl. ¶ 379.  But Plaintiff ***received*** health care services.  Courts routinely dismiss unjust enrichment claims in precisely these circumstances.  *See, e.g.*, *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *3 (M.D.N.C. Aug. 24, 2023) ("There is no allegation the plaintiffs did not receive the medical care they expected in return, and they have not made out a claim of unjust enrichment."); *Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 136 (Okla. Civ. App. 2024) (affirming dismissal because "Plaintiffs paid for medical services — not data privacy services — and [defendant] did not receive any direct benefit from Plaintiffs toward data privacy services.").

Third, Plaintiff's unjust enrichment claim must be dismissed because he has an adequate

remedy at law. [5]  Plaintiff's other claims for money damages provide adequate remedies at law

and Plaintiff does not plead otherwise.  *Goldberg*, 2018 WL 8370060, at *18 (dismissing unjust

enrichment claim because "Plaintiff fail[ed] to allege his legal remedies are insufficient.").

### G.    Plaintiff's VCPA Claim Fails Because He Is Not a "Consumer" and Has Not Pled Any Material Representations or Unfair Acts.

The VCPA prohibits "unfair or deceptive acts or practices in commerce."  9 V.S.A.

§ 2453(a).  To maintain a private action under 9 V.S.A. § 2461(b), a consumer must "show either

(1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from

an unfair or deceptive act."  *Dernier v. Mortg. Network, Inc.*, 195 Vt. 113, 136 (2013).

#### 1.    Plaintiff Is Not A "Consumer" and the Alleged Harm Was Not Caused By Acts "In Commerce."

For both reliance and damages claims, the VCPA allows certain "consumer[s]" harmed

by "unfair or deceptive acts or practices in commerce" to bring private actions.  9 V.S.A.

§§ 2453(a), 2461(b).  A "consumer" under the VCPA is someone who "pay[s] consideration for

goods or services" in some way.  9 V.S.A. § 2451a(1).  To be considered "in commerce," the

transaction must take place "in the context of [an] ongoing business in which the defendant holds

himself out to the public."  *Foti Fuels, Inc. v. Kurrle Corp.*, 195 Vt. 524, 536 (2013).

As a patient, Plaintiff does not fit into this definition of a "consumer" under the VCPA.

Indeed, the Second Circuit in *Otis-Wisher v. Medtronic, Inc.* held that a patient was not a

consumer under the VCPA where she sustained injuries following implantation of an allegedly

defective medical device.  616 F. App'x 433, 435 (2d Cir. 2015).  In so finding, the Second

---

[5] Plaintiff's unjust enrichment claim is pled "in the alternative to [his] breach of contract claim." Compl. ¶ 378.  If the Court finds there is an express contract (it should not, *see supra* Section II.B), it should dismiss the unjust enrichment claim.  *See Goldberg*, 2018 WL 8370060, at *18.

Circuit found that "Plaintiff . . . did not, for her personal use, purchase [the medical device], which in any event is not available for consumer purchase, but rather was prescribed the medical device by her doctor." *Id.* Similarly, UVM Health's services are not available for "consumer purchase" and are not for Plaintiff's "personal use" as a patient. Compl. ¶ 4 ("Defendants disregarded the privacy rights of its patients who used its Website").

Additionally, Plaintiff's VCPA claim is not even premised on the services UVM Health holds itself out to the public as providing—*e.g*., medical and healthcare services—but are rather based upon the wholly ancillary matter regarding its privacy practices. Thus, the VCPA claim is not premised on any transaction "in commerce" as UVM Health is a healthcare organization in the business of providing medical care. Plaintiff acknowledges this by failing to allege he paid any consideration for services related to privacy. And any alleged services related to privacy practices are certainly not available for "consumer purchase" or a patient's "personal use."

Therefore, as a patient Plaintiff is not a consumer under the VCPA and did not pay consideration for the "personal use" of any services related to UVM Health's privacy practices.

2.    Plaintiff Fails to Plead that Any Misrepresentations Were Material.

Establishing a "deceptive act or practice" requires three elements: (1) "a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998). Under the third prong, materiality is measured by an objective standard, premised on what a reasonable person regards as important in making a decision. *DJ's Tree Serv. & Logging, Inc. v. Bandit Indus., Inc.*, 557 F. Supp. 3d 511, 534–35 (D. Vt. 2021).

Any alleged misleading statements were not material because they did not influence Plaintiff's, or any reasonable consumer's, decision regarding engaging with UVM Health's

medical and healthcare services.  In fact, Plaintiff does not even allege he ever saw or reviewed the statements in the privacy policies before he visited the website (or ever), much less that he relied on the statements in choosing to engage with or continue using UVM Health's services. *See First Quality Carpets, Inc. v. Kirschbaum*, 192 Vt. 28, 39 (2012) (denying VCPA claim where plaintiffs did not rely on any alleged statements in making purchasing decision).

### 3.   Plaintiff Fails To Plead An Unfair Act.

"Whether an act is 'unfair' is guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers."  *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (citation omitted).  There are no well-pled allegations that support the contention that UVM Health's activities offend public policy or are immoral, unethical, oppressive, or unscrupulous.  Moreover, there is no cognizable injury alleged here (*see* Section II.A), let alone one that causes "substantial injury" to consumers.  Vermont courts impose a high standard when considering whether an act is "unfair" under the VCPA.  For example, the court in *In re Weaver* found that defendant may have engaged in unethical and oppressive practices if evidence were to reflect awareness of the consequences of its conduct, which included charging fees which may not have been contractually due, while simultaneously providing the plaintiffs with an inaccurate and constantly shifting accounting of their debt and payment obligations.  2015 WL 4722615, at *6 (Bankr. D. Vt. Aug. 7, 2015).  Importantly, the court there found the allegations painted a picture of the defendant as "deriving every benefit from its relationship with the consumer . . . while abdicating all corresponding obligations . . . to those consumers."  *Id.*  Here, Plaintiff never alleges that UVM Health failed to provide adequate medical services while reaping every benefit from its relationship with its patients, refused any proper services, or had any awareness of the consequences of any alleged improper conduct.

24

**III.    Plaintiff's Requests for Injunctive Relief and Punitive Damages Are Improper.**

**A.    Plaintiff Does Not Have Standing to Pursue Injunctive Relief.**

Plaintiff does not have standing to pursue injunctive relief because he admits UVM

Health removed the Meta Pixel, Compl. ¶ 133, and in any event, he does not allege continued use

of the Website. *Id.* ¶¶ 33, 39.  For standing, a plaintiff must show he has sustained or is

immediately in danger of sustaining some direct injury from of the challenged conduct, and the

injury or threat of injury must be real and immediate, not conjectural or hypothetical.  *Ehlers v.

Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, at *11 (D. Vt. May 7, 2020); *see Nicosia v.

Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (plaintiff lacked standing for injunctive

relief where defendant ceased selling the product).  Because Plaintiff lacks standing, "he also

cannot pursue injunctive relief on behalf of the proposed class."  *Ehlers*, 2020 WL 2218858, at

*11.  The Court should therefore dismiss the request for injunctive relief.

**B.    Plaintiff Fails To Meet His Burden To Plead Punitive Damages.**

To prevail on a claim for punitive damages, a plaintiff must show: "(1) wrongful conduct

that is outrageously reprehensible; and (2) malice."  *Rousseau v. Coates*, 2022 WL 3910990, at

*2 (D. Vt. Aug. 30, 2022) (citation omitted).  "Malice" means "variously as bad motive, ill will,

personal spite or hatred, reckless disregard, and the like."  *Id.* (citation omitted).  None of

Plaintiff's allegations satisfy this standard.  Plaintiff requests punitive damages in connection

with his Wiretap Act, negligence, and breach of fiduciary duty causes of action, but does not

allege the conduct supporting these claims was "outrageously reprehensive" or constituted

"malice."  *See, e.g.*, Compl. ¶¶ 293, 370, 376.  The Court should dismiss Plaintiff's request for

punitive damages because he failed to meet his burden to plead that he is entitled to such relief.

<u>**CONCLUSION**</u>

UVM Health requests the Court grant its motion to dismiss Plaintiff's Complaint.

Dated: August 30, 2024                    Respectfully Submitted,

*/s/ Ian P. Carleton*
Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
Phone: 802-865-6321
Fax: 802-864-6815
Email: icarleton@sheeheyvt.com

*/s/ Kenneth L. Chernof*
Kenneth L. Chernof (*pro hac vice* pending)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W
Washington, D.C. 20001
Tel: (202) 942-5000
Email: ken.chernof@arnoldporter.com

David B. Schwartz (*pro hac vice* pending)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Email: david.schwartz@arnoldporter.com

Daniel E. Raymond (*pro hac vice* pending)
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street
Chicago, Illinois 60602-4321
Tel: (312) 583-2300
Email: daniel.raymond@arnoldporter.com

*Counsel for Defendants University Of Vermont*
*Health Network Inc. and University Of*
*Vermont Medical Center Inc.*